UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MUHAMMAD SHAHIDULLAH and

DAWAH USA INC.,

     Plaintiffs,

     v.                                   Case No. _____ CV _____

INVESTIGATIVE PROJECT ON TERRORISM
FOUNDATION,

INVESTIGATIVE PROJECT ON TERRORISM
RESEARCH GROUP, INC., and

ABHA SHANKAR;


     Defendants.
----------------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL FOR DAMAGES

Plaintiffs Imam Muhammad Shahidullah ("Imam Shahidullah") and Dawah USA Inc. (collectively "Plaintiffs"), by and through their undersigned attorneys, allege as follows on personal knowledge, and on information and belief, for this Complaint against Defendants:

### BACKGROUND

1.     Plaintiff Imam Shahidullah is a respected Imam (Islamic religious leader) in New York City. Imam Shahidullah has been targeted by Defendants in an unfounded attempt to smear his reputation and expose him to xenophobic and Islamophobic hatred.

2.     Imam Shahidullah has devoted his career to interfaith efforts and peace advocacy. In 2016-2017, Imam Shahidullah created Dawah USA Inc., a 501(c)(3) public charity devoted to promoting and developing cooperation and understanding among people of diverse faiths in general and Muslims in particular.

3.     The New York City Council has cited Imam Shahidullah as "an outstanding citizen who is worthy of the esteem of both our community and the great City of New York."

4.     In an August 9, 2019 article (the "Article") on their website, Defendants wrongfully accused Plaintiffs of operating a so-called "extremist" website www.dawahusa.com and publishing the teachings of a deceased Al-Qaeda cleric, among other highly inflammatory and unfounded statements. Defendants concluded the Article stating: "The fact that a hard-core Islamist operating under the guise of an interfaith worker is embraced by law enforcement is concerning and highlights the rising danger from Islamist wolves masquerading in sheep's clothing."

5.     Defendants have, since being contacted by Plaintiffs' counsel on September 28, 2020, taken down the Article, replacing it with a statement addressing their mistake. Defendants do not dispute that they made an "error" and "incorrectly connected" Plaintiffs to what they call an extremist website. In their October 5, 2020 communication to Plaintiff through counsel, Defendants indicate they were able to realize this error "upon review" of the website, suggesting that such a review never occurred prior to the publication of such a prejudicial and inflammatory article.

6.     Notably, Defendants never contacted Plaintiffs prior to publication.

7.     The Article was maintained for over a year and re-published in several anti-Muslim publications and websites, leading to more than one hundred offensive comments, subjecting Plaintiffs to significant embarrassment, fear of discriminatory targeting, and damage to reputation.

8.     When Plaintiff Imam Shahidullah contacted the Article's author, Defendant Shankar, to inform her that neither he nor Dawah USA Inc. are associated with the website dawahusa.com, Ms. Shankar blocked him on Twitter and did not otherwise respond. Further, when Imam Shahidullah contacted the Investigative Project on Terrorism ("IPT") founder and director, Steve Emerson, via Facebook, Mr. Emerson responded "No fuck u." Imam Shahidullah attempted to explain that neither he nor Dawah USA Inc. are associated with dawahusa.com, and Mr. Emerson did not respond. The Article was only removed once Plaintiffs contacted Defendants through counsel.

9.     Defendants, through counsel, maintained in their communication to Plaintiffs that IPT "retains the right to publish its findings about the connections of [Plaintiff Shahidullah]" to "radical material." Plaintiff receives this as a threat, and views it as further evidence that the publication of the August 9, 2019 was not done out of careless error but is part of a deliberate, malicious, and targeted effort to tarnish his reputation, interfaith work, and career of contributions to New York City's community.

## THE PARTIES

10.     Plaintiff Muhammad Shahidullah is an Imam residing in Queens, New York who is active in interfaith outreach and runs a 501(c)(3) public charity titled Dawah USA Inc.

11.     Plaintiff Dawah USA Inc. is a registered 501(c)(3) not-for-profit based in Queens, New York.

12.     Defendant Investigative Project on Terrorism Foundation is a non-profit research organization based in Washington, D.C. which claims to be a storehouse of archival data and intelligence on Islamic and Middle Eastern terrorist groups.

13.     Defendant Investigative Project on Terrorism Research Group Inc. is a not-for-profit organization which provides management services to the Investigative Project on Terrorism Foundation.

14.     Upon information and belief, Defendants Investigative Project on Terrorism Foundation and Investigative Project on Terrorism Research Group Inc. collectively and jointly own and operate the research group called "The Investigative Project on Terrorism" and its accompanying website www.investigativeproject.org. According to The Investigative Project on Terrorism website, Defendant Investigative Project on Terrorism Foundation is the fund-raising arm for The Investigative Project on Terrorism.

15.     Defendant Abha Shankar is a researcher for the Investigative Project on Terrorism and author of the Article at issue in this Complaint. Upon information and belief, Defendant Shankar is a resident of Washington, D.C.

## JURISDICTION AND VENUE

16.     Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Plaintiff's claims based on the parties' diversity of citizenship and because the amount in controversy exceeds $75,000.

17.     Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391, because this Court has personal jurisdiction over Plaintiff and by reason of the fact that, among other things, the statements in question were published in this district.

## STATEMENT OF FACTS

18.     The Investigative Project on Terrorism ("IPT") is a research organization which claims to be a storehouse of archival data and intelligence on international terrorist groups. It maintains a website on which is publishes its claims and research.

19.     Upon information and belief, Defendants Investigative Project on Terrorism Foundation and Investigative Project on Terrorism Research Group Inc. collectively and jointly own

and operate the research group called "The Investigative Project on Terrorism" and its accompanying website www.investigativeproject.org. According to The Investigative Project on Terrorism website, Defendant Investigative Project on Terrorism Foundation is the fund-raising arm for The Investigative Project on Terrorism.

20.     IPT has faced scrutiny over the substantiation of its claims regarding Islamic religious leaders. For example, the Center for American Progress, a public policy research organization, in a comprehensive 130-page report analyzing Islamophobia in the United States, reviewed IPT and concluded that it believed IPT to be a key part of the "the Islamophobia network in America."[1] Additionally, the Southern Poverty Law Center, an authority on the study of domestic hate and terrorism groups, took issue with IPT's characterization of data presented to Congress which it viewed as "meant to hype the domestic Muslim threat."[2] IPT's broader agenda provides insight as to the context and intent by which IPT published its statements regarding Plaintiff.

21.     From August 9, 2019[3] to October 5, 2020, Defendants published an article authored by Defendant Abha Shankar on the IPT website titled "NY Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side." The Article said "But Shahidullah also runs a proselytizing website, Dawah USA, that ostensibly seeks to invite people to Islam but in fact serves as a clearinghouse for extremist and Islamist propaganda, the Investigative Project on Terrorism finds."

22.     The Article claimed that Imam Shahidullah ran a website, www.dawahusa.com. However, neither Imam Shahidullah nor Dawah USA Inc. own or manage www.dawahusa.com or

---

[1] Wajahat Ali et al., *Fear, Inc.: The Roots of the Islamophobia Network in America*, CENTER FOR AMERICAN PROGRESS (August 2011), 127.

[2] Robert Steinback, *Steve Emerson, Backing King Hearings, Pushes Misleading Statistic on Muslim Terrorism*, SOUTHERN POVERTY LAW CENTER (Mar. 23, 2011), *available at* https://www.splcenter.org/hatewatch/2011/03/23/steve-emerson-backing-king-hearings-pushes-misleading-statistic-muslim-terrorism.

[3] Plaintiffs' complaint is timely as Governor Cuomo has tolled the statute of limitations for civil actions due to the COVID-19 pandemic. The Statute of Limitations has been held in abeyance since March 20, 2020. *See* Executive Order 202.67 tolling statute of limitations until November 3, 2020.  https://www.governor.ny.gov/news/no-20267-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

have knowledge concerning the identity/identities of the party/parties operating www.dawahusa.com. The term "da'wah" means to make an invitation and is a common phrase in Islam.

23.    The Article claimed that "extremist material published on the Dawah USA website includes an audio of American-born al-Qaida cleric Anwar al-Awlaki's infamous 2002 'It's a War on Islam' speech." It claimed that "Dawah USA also features speeches by Ali al-Timimi, the spiritual leader of the Virginia Jihad Network."

24.    The Article concluded stating: "The fact that a hard-core Islamist operating under the guise of an interfaith worker is embraced by law enforcement is concerning and highlights the rising danger from Islamist wolves masquerading in sheep's clothing."

25.    Plaintiff Dawah USA Inc. is a 501(c)(3) tax-exempt public charity and has published none of these materials. Its purpose is to "promote and develop cooperation and understanding among the people of diverse faiths in general and Muslims in particular." Its projects include interfaith support and contributing toward a society free of prejudice. At the time of Defendants' publication of the Article, Plaintiff Dawah USA Inc. did not have a website. Plaintiff Dawah USA Inc. recently established its webpage at www.dawahusa.org. Prior to publication of the Article, Plaintiff Dawah USA Inc. was not contacted by Defendants.

26.    Imam Shahidullah is active in interfaith outreach in New York City and has received accolades for his efforts. He is the director of ITV USA, a New York-based American television channel and was President of Interfaith Center of South Asia. He is the founder and president of Interfaith Center of USA. He is also a chaplain for the New York State Chaplain Task Force.

27.    Imam Shahidullah has participated in interfaith events organized by New York's 9/11 tribute museum, offered the Bangladesh Day Invocation to the New York State Senate Chambers in Albany on March 24, 2015; been a speaker to the NYPD, and attended the United Nations World Interfaith Harmony Week.

28.     In 2016, New York State Senator Tony Avella honored Imam Shahidullah with a proclamation for his relentless dedication to the betterment of his community and found Imam Shahidullah to be "an individual of our highest respect and esteem." Copy of the proclamation is attached as Exhibit A.

29.     In 2018, the New York City Council member Costa Constantinides cited Imam Shahidullah as "an outstanding citizen who is worthy of the esteem of both our community and the great City of New York." City Council Citation is attached as Exhibit B.

30.     In 2019, Imam Shahidullah received a New York State Assembly Citation in recognition of his dedication and service to the NY community. New York State Assembly Citation is attached as Exhibit C.

31.     Imam Shahidullah first learned of the Article on or around March 4, 2020, when he received a phone call from the print shop owner that he and Dawah USA Inc. use for their printing needs. The print shop owner called to inform Imam Shahidullah that another customer and journalist (the "Customer") with Weekly Nobojug, a Bangla news and media website, had advised the print shop owner to disassociate from and to be careful of Imam Shahidullah because Imam Shahidullah "is involved with something bad" involving a website. The print shop owner defended Imam Shahidullah against the accusations. The Customer informed the print shop owner to run a Google search of Imam Shahidullah to find the information for himself. The print shop owner ran a Google search and found Defendants' Article and the defamatory statements contained therein.

32.     On the phone call between Imam Shahidullah and the print shop owner, the print shop owner began to question Imam Shahidullah about the content in Defendants' Article. Imam Shahidullah was dumbfounded. Imam Shahidullah defended himself and his reputation during the call.

33.      When Imam Shahidullah ran a Google search on himself, he found Defendants' Article littered on more than a dozen websites. Imam Shahidullah was shocked and immediately worried about his safety, relationships, and reputation, and that his life's work on bringing people of different faiths together would be damaged and permanently ruined and stained by the Article. He began to suffer from severe anxiety and extreme stress.

34.      After reading the Article, Imam Shahidullah began researching Defendants and on the ways he could contact Defendants to inform them that their statements about him and Dawah USA Inc. were false.

35.      On March 5, 2020, shortly after midnight because Imam Shahidullah could not sleep due to his anxiety and fears, Imam Shahidullah contacted Defendant Abha Shankar on Twitter to inform her that neither he nor Dawah USA Inc. are associated with the website dawahusa.com.



36.      Instead of responding or contacting Imam Shahidullah, Defendant Abha Shankar blocked Imam Shahidullah on Twitter.

37.      Imam Shahidullah then proceeded on March 5, 2020, at 9:15 a.m. to send a tweet on Twitter to IPT. Imam Shahidullah identified himself, provided his cell phone and email, and clearly informed Defendants that Plaintiffs have no association with the dawahusa.com website. Imam Shahidullah did not receive a response.



38.     Trying everyway he knew how, Imam Shahidullah learned that Steven Emerson is the founder and director of IPT.  On March 5, 2020, at 9:17 a.m., Imam Shahidullah sent a message to Mr. Emerson on Facebook.  When Imam Shahidullah asked to speak, Mr. Emerson responded "No fuck u." Despite this hostile and hateful response, Imam Shahidullah continued to introduce himself, asked to speak about the Article, and informed Mr. Emerson he was "not associated with this website [referring to dawahusa.com]." Imam Shahidullah told Mr. Emerson that he does not know who built and developed the dawahusa.com website. Mr. Emerson did not respond.

39.     On September 28, 2020, Imam Shahidullah sent, through counsel, a cease and desist letter to the Investigative Project on Terrorism, pointing out the false and defamatory nature of the August 9, 2019 article.

40.     In a reply letter dated October 5, 2020, Defendants, through counsel, stated that "upon review we have concluded that your client's website is indeed www.dawahusaw.org [sic] and not www.dawahusa.com. We have therefore taken down our August 9, 2019 article and in its place posted a retraction and will notify other websites who have posted or have referred to our article of this mistake."

41.     Defendants published a "Note to Readers" on their web site admitting that on August 9, 2019, Defendants published a story titled "NY Imam Active in interfaith Work Disseminates Extremist Propaganda on the Side." In the Note, IPT indicates that it "incorrectly connected Muhammad Shahidullah to this website DawahUSA.com" and that "we regret the error."

42.     The Article was republished in several places and still maintained on different sites which reveal the impact and harm done to Imam Shahidullah's reputation. For example, the Facebook page for the organization Citizens for National Security, which has nearly half a million followers, maintains a post with excerpts from the IPT piece which has elicited over one hundred comments, several of a highly inflammatory and Islamophobic nature that are now associated with web searches of Plaintiff's name.



43.     As another example, the Twitter page of Amy Mek (@AmyMek) who has more than a quarter million followers and runs an anti-Muslim organization called RAIR Foundation, maintains a post with excerpts from the Defendants' Article.



44.     Ms. Mek's post has been shared or retweeted on Twitter 314 times and has garnered several highly inflammatory and offensive remarks directed at Plaintiff Shahidullah, including one commenter who commented "This son of a bitch [referring to Imam Shahidullah] should be arrested and, if applicable, deported immediately."



45.     According to Defendant IPT's website, the Article was shared directly from the website to Facebook 340 times. Additionally, the Article through the website was shared 49 additional times onto other platforms.  This data is available at https://www.investigativeproject.org/8031/ny-imam-active-in-interfaith-work-disseminates.



46.     Defendant Abha Shankar also disseminated the Article to her more than 1000 followers on Twitter.  As of the date of filing, Defendant Shankar continues to keep a post about the Article with defamatory statements on her profile at the www.muckrack.com website.  See screenshot taken on November 2, 2020 from Defendant Shankar's profile on Muck Rack:

**MUCK RACK**

New York Imam Active in Interfaith Work Disseminates Extremist Propaganda on the Side

By Abha Shankar

algemeiner.com — New York City's Diamond District. Photo: Wikimedia Commons. Muhammad Shahidullah is a man of seeming contradictions. As an imam, he is active in interfaith outreach, speaking to the New York Police Department and visiting the White House in April as part of an interfaith delegation. In December 2017, he participated in an interfaith event organized at New York's 9/11 Tribute Museum.

ABOUT A YEAR AGO      Open in Who Shared      Wrong byline?

47.     Upon information and belief, Defendants disseminated the Article to its e-mail listserv/newsletter which contains thousands of individuals and/or organizations throughout the United States.

48.     Upon information and belief, Defendants actively disseminated the Article to other anti-Muslim organizations and/or media organizations.

49.     Defendants took steps to ensure that the Article was widely disseminated.

50.     At the time the Article was published Defendants knew the Article was false or was made with reckless disregard for the truth or falsity of the statements it contained. It was <u>not</u> published in innocent error. Indeed, Defendants demonstrate a continued eagerness to publish disparaging and false claims regarding Imam Shahidullah. Defendants remain, for whatever reason, convinced of its perception of Imam Shahidullah as an "extremist" and seeks to engage in a deliberate, malicious, and targeted effort to tarnish his reputation, interfaith work, and career of contributions to New York City's community.

51.     The false statements contained within the Article are defamation per se because they involved behavior incompatible with the proper conduct of Imam Shahidullah's business, trade or profession of being an interfaith religious leader.

52.     The false statements contained within the Article are defamation per se because they involved behavior incompatible with the proper conduct of Dawah USA Inc.'s business, trade or profession of being not-for-profit organization to bring people of different faiths together through interfaith work.  Dawah USA Inc. is further damaged when its founder and executive officer is falsely maligned by Defendants.

53.     The falsehood caused significant harm to the reputation of Plaintiffs. Imam Shahidullah and Dawah USA Inc. have suffered damage as a result of the false and defamatory article in an amount to be proven at trial but in excess of $75,000.

## CAUSE OF ACTION
### (Defamation)

54.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

55.     Defendants' statements were defamatory per se.

56.     The plain import of the statements were an attack on the character, reputation, repute, name and status of Imam Shahidullah and are reasonably understood to state that Imam Shahidullah owned and/or operated an extremist website, ran a clearinghouse for extremist propaganda, and is associated with a deceased terrorist and Al-Qaida cleric Anwar al-Awlaki.

57.     The plain import of the statements were an attack on the character, reputation, repute, name and status of Dawah USA Inc. and are reasonably understood to state that Dawah USA Inc. owned and/or operated an extremist website, ran a clearinghouse for extremist propaganda, and is associated with a deceased terrorist and Al-Qaida cleric Anwar al-Awlaki.

58.     Defendants concede that they made the statements and that the statements were false. They admit "upon review" that the statements contained in their article were false. Defendants made the statements either knowing they were false, having serious doubts about their truth, or with reckless disregard for their truth or falsity.

59.     Defendants' statement exposed Imam Shahidullah and Dawah USA Inc. to hatred, xenophobia, Islamophobia, contempt, ridicule, and shame, and discouraged others from hiring, associating or dealing with him and/or Dawah USA Inc.

60.     As a result, Imam Shahidullah and Dawah USA Inc. have suffered damages in an amount to be proven at trial, including but not limited to, harm to reputation, emotional harm and exposure to contempt, ridicule and shame.

61.     Imam Shahidullah's and Dawah USA Inc's damages exceed $150,000.

62.     In making the defamatory statements identified herein, as evidenced by the context in which Defendants operate their website and face public critique for their role in encouraging Islamophobia, Defendants acted with malice, oppression, or fraud, and are thus responsible for punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A.     Compensatory damages in an amount to be proven at trial;

B.     Punitive damages;

C.     Award counsel for Plaintiffs costs and attorneys' fees; and

D.     Grant any further relief that this Court deems just and proper.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned counsel, and hereby demands trial by jury.

Dated: November 2, 2020

Respectfully submitted,

COUNCIL ON AMERICAN-ISLAMIC RELATIONS, NEW YORK INC. (CAIR-NY)

   /s/ Ahmed Mohamed
Ahmed Mohamed
Legal Director
46-01 20th Avenue,
Queens, NY 11105
(646) 665-7599
ahmedmohamed@cair.com

Carey Shenkman
Of-Counsel, Council on American-Islamic Relations
New York Inc.(CAIR-NY)
347 5th Ave Suite 1402
New York, NY 10016
(646) 598-6972
carey@cshenkman.com